# EXHIBIT EIGHT

# CONTENTCOLO.COM

# TERMS OF SERVICE



Legal

1. SERVICES. THIS AGREEMENT (this "Agreement") applies to the purchase from CONTENT DISTRIBUTION SYSTEMS, Ltd. dba CONTENTCOLO, a Nevada Limited Liability Company ("COLO"), of all services (collectively, the "Services") selected by Customer on the Internet Services Order Form as applicable, incorporated by reference and attached hereto, if any, except that if Customer is also ordering web site production services and/or consulting services, Customer is also required to sign the agreements specific to those services. COLO reserves the right to modify its network and facilities used to provide the Services for purposes including but not limited to accommodating evolving technology and increased network demand, and providing enhanced services. COLO shall use reasonable efforts to notify Customer of any planned changes to COLO's network or facilities that may adversely affect the Services provided hereunder.

2. TERM. This Agreement shall be for the term specified by Customer on the Internet Services Order Form as applicable (the "Initial Term"). This Agreement will be automatically renewed, at the end of the Initial Term, on a month to month basis unless either party provides thirty (30) days written notice to the other of termination of this Agreement prior to the end of the then current term. The Initial Term and all month to month extensions thereof are collectively referred to herein as the "Term" of this Agreement.

3. BILLING AND PAYMENT.
   (a) Pricing: During the term of this Agreement, Customer shall pay the fees for the Services that are set forth on the Internet Services Order Form, as applicable. Such fees may include taxes, fees or assessments by governmental agencies and COLO shall have the right, at any time, to pass through and invoice to Customer any new or increased taxes, fees, assessments or other charges imposed on or required to be collected by COLO by any governmental agency.
   (b) Terms Of Payment: Invoices are due and payable upon receipt. All payments shall be made in U.S. currency.
   (c) Service Continuation After Initial Term. The fees set forth in the Internet Services Order Form are guaranteed during the Initial Term of this Agreement. If Customer continues to receive the Services after the Initial Term without entering into a new agreement or agreement extension, the fees charged after the Initial Term shall be at the then standard COLO rates for such services, without discount, determined month to month.
   (d) Service Charge: Customer will pay a late payment charge equal to 1.5% or the highest amount permitted by law, (whichever is lower) per month or portion thereof on the outstanding balance of any invoice remaining unpaid thirty (30) days after the date upon which payment is due.
   (e) Suspension Or Interruption Of Service For Non-Payment: In the event Customer's account becomes past due, or is otherwise deemed insecure, COLO may, in its sole discretion, suspend, interrupt or disconnect the Services. In the event of such suspension, interruption or disconnection, Customer may be required to post a deposit or such other security, as COLO deems necessary in order to resume receiving the Services. In addition, if COLO in its sole discretion, deems Customer to be financially insecure, COLO may require such other action of Customer, including letters of credit, security deposit(s), restrictions on available credit or other action as COLO may require from time to time regardless of Customer's then-current status or payment history. Failure to satisfy COLO's request for such action within timelines set by COLO may result in immediate termination of service without further notice.

4. YOUR ACCOUNT, PASSWORD, AND SECURITY. Upon acceptance of this agreement, Customer will receive a username, password, and account designation. Customer is solely responsible for use of the Service. Customer must keep password confidential so that unauthorized third parties may not access the Services through the account. Customer must notify COLO immediately upon discovering any such unauthorized use of account Services.

5. ACCEPTABLE USES. Customer shall at all times adhere to the "COLO Acceptable Use Policy" located at http://www.contentcolo.com as amended from time to time by COLO effective upon posting of the revised policy at the URL. Notwithstanding anything to the contrary contained herein, COLO may immediately take corrective action, including disconnection or discontinuance of any and all Services, or terminate this Agreement in the event of notice of possible violation by Customer of the COLO Acceptable Use Policy. In the event COLO takes corrective action due to a violation of the COLO Acceptable Use Policy, COLO shall not refund to Customer any fees paid in advance of such corrective action.

6. CANCELLATION POLICY. Customer may terminate this Agreement by giving COLO at least thirty (30) days prior written notice. However, Customer remains obligated to pay all amounts remaining in the Initial Term, and if COLO has purchased equipment on behalf of Customer, including but not limited to circuit and router, Customer shall assume responsibility for payments for such equipment, until paid in full. In order to terminate early, Customer's primary contact person on the account should notify COLO of such request to do so. In the case of credit card orders, all termination requests should be signed by Customer's primary contact person on the account who must provide the last four digits of the credit card on file with COLO. However, COLO shall not be liable for unauthorized termination of an account. Any termination by COLO or Customer shall not relieve Customer of any obligations to pay fees accrued prior to such termination. COLO reserves the right to terminate this Agreement without cause prior to the end of the term upon thirty (30) days written notice to Customer.

7. ADDRESS OWNERSHIP. COLO shall maintain and control ownership of all IP numbers and addresses that may be assigned to Customer by COLO and COLO reserves, in its sole discretion, the right to change or remove any and all such IP numbers and addresses.

Web2PDF

8. CACHING. Customer expressly (i) grants to COLO a license to cache the entirety of Customer's Web Site, including content supplied by third parties, hosted by COLO under this Agreement and (ii) agrees that such caching is not an infringement of any of Customer intellectual property rights or any third party's intellectual property rights.

9. BANDWIDTH AND/OR DISK USAGE. Bandwidth is provided on a best effort basis and, unless specifically offered as such, data transfer rates are not guaranteed. Customer agrees that bandwidth and/or disk usage shall not exceed the number of megabytes per second/month for the Services ordered by Customer on the Internet Services Order Form. COLO shall monitor the customer's usage. If bandwidth or disk usage exceeds the agreed upon number of megabytes per second/month, COLO, in its sole discretion, may first assess additional standard charges, and, in cases considered to be extreme, disconnect or discontinue any and all Services, or terminate this Agreement. In the event that COLO elects to take such action, Customer shall not be entitled to a refund of any fees paid in advance of such corrective action.

10. EQUIPMENT. COLO is acting only as a reseller and/or provider of any hardware, software, circuit and equipment (collectively, the "Equipment") offered under this Agreement that was manufactured by a third party. COLO shall not be responsible for any changes in Service(s) that cause Equipment to become obsolete, require modification or alteration, or otherwise affect the performance of the Service(s). Any malfunction or manufacturer's defects of Equipment either sold or provided by COLO to Customer or purchased directly by Customer used in connection with the Service(s) will not be deemed a breach of COLO's obligations under this Agreement. Any rights or remedies Customer may have regarding the performance or compliance of Equipment are limited to those rights extended to Customer by the manufacturer of such Equipment. Customer is entitled to use any Equipment supplied by COLO only in connection with Customer permitted use of the Service(s). Customer shall not resell, transfer, export or re-export any Equipment, or any technical data derived therefrom, in violation of any applicable United States or foreign law.

11. DISCLAIMER OF WARRANTY. Customer acknowledges and agrees that COLO exercises no control over, and accepts no responsibility for, the content of the information passing through COLO's host computers, network hubs and points of presence (the "COLO Network") or the Internet. NEITHER COLO, ITS EMPLOYEES, AFFILIATES, AGENTS, SUPPLIERS, THIRD-PARTY INFORMATION PROVIDERS, MERCHANTS, LICENSORS NOR THE LIKE MAKE ANY WARRANTIES OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT FOR THE SERVICES OR ANY EQUIPMENT COLO PROVIDES. NEITHER COLO, ITS EMPLOYEES, AFFILIATES, AGENTS, THIRD-PARTY INFORMATION PROVIDERS, MERCHANTS, LICENSORS OR THE LIKE WARRANT THAT THE SERVICES WILL NOT BE INTERRUPTED OR ERROR FREE NOR DO ANY OF THEM MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE SERVICES OR AS TO THE ACCURACY, RELIABILITY OR CONTENT OF ANY INFORMATION SERVICES OR MERCHANDISE CONTAINED IN OR PROVIDED THROUGH THE SERVICES. COLO IS NOT LIABLE FOR THE CONTENT OR LOSS OF ANY DATA TRANSFERRED EITHER TO OR FROM CUSTOMER OR STORED BY CUSTOMER OR ANY OF CUSTOMER'S CLIENTELE VIA THE SERVICE(S) PROVIDED BY COLO.

12. INDEMNIFICATION. Customer will indemnify, save harmless, and defend COLO and all directors, officers, employees, and agents of COLO (collectively "indemnified parties") from and against any and all claims, damages, losses, liabilities, suits, actions, demands, proceedings (whether legal or administrative) and expenses (including but not limited to reasonable attorneys' fees) arising out of or relating to the use of the Services by Customer, including any violation of the COLO Acceptable Use Policy. Such claims shall include, but shall not be limited to, claims based upon trademark, service mark, trade name, copyright and patent infringement, trademark dilution, tortious interference with contract or prospective business relations, unfair competition, defamation or injury to reputation, damage and/or injury to any person and any person's property which may be sustained because of the installation, delivery, providing or maintenance of Services, Equipment, or wiring on the Premises, or other injuries or damage to business.

13. LIMITATION OF LIABILITY. IN NO EVENT SHALL COLO BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, OR LOSS OF PROFITS, REVENUE, DATA OR USE, SUFFERED BY CUSTOMER OR ANY THIRD PARTY, WHETHER IN AN ACTION IN CONTRACT, TORT OR STRICT LIABILITY OR OTHER LEGAL THEORY, EVEN IF COLO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. In no event will COLO's liability for any damages, losses and causes of actions whether in contract or tort (including negligence or otherwise) exceed the actual dollar amount paid by Customer for the Service which gave rise to such damages, losses and causes of actions during the 12-month period prior to the date the damage or loss occurred or the cause of action arose. Some jurisdictions do not allow the exclusion or limitation of warranties or incidental or consequential damages, so that the above limitations or exclusions may not apply to Customer. In such jurisdictions, COLO's liability (and the liability of its affiliates, agents, content providers and service providers) shall be limited to the greatest extent permitted by applicable law.

14. FORCE MAJEURE. COLO shall not be liable for failure or delay in performing its obligations hereunder if such failure or delay is due to circumstances beyond its reasonable control, including, without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, flood, strike or other labor disturbance, interruption of or delay in transportation, unavailability of or interruption or delay in telecommunications or third party services, failure of third party software or inability to obtain raw materials, supplies, or power used in or equipment needed for provision of the Services.

15. INTELLECTUAL PROPERTY. Customer represents and warrants that Customer's use of the Services shall not infringe the intellectual property or other proprietary rights of COLO or any third party. Customer further acknowledges that all right, title and interest in any and all technology, including the software that is part of or provided with the Services and any trademarks or service marks of COLO (collectively, "COLO Intellectual Property") is vested in COLO and/or in COLO's licensors. Unless otherwise specifically provided in this Agreement, Customer shall have no right, title, claims or interest in or to the COLO Intellectual Property. Customer may not copy, modify or translate the COLO Intellectual Property or related documentation, or decompile, disassemble or reverse engineer the COLO Intellectual Property, to use it other than in connection with the Services, or grant any other person or entity the right to do so. Unless otherwise specifically provided in this Agreement, Customer is not authorized to distribute or to authorize others to distribute the COLO Intellectual Property in any manner without the prior written consent of COLO, provided, however, that nothing in this sentence would preclude Customer from using the COLO Intellectual Property as incorporated in the Services. This paragraph shall not operate to extinguish, restrict, vary, waive or affect in any manner whatsoever any right, title or interest which Customer may now have or hereafter acquires in, or in relation to, the third-party software that is part of or provided with the Services solely to the extent such third-party licensors publicly provide such rights, title or interest in the third-party software to Customer.

16. CONFIDENTIAL INFORMATION. Each party acknowledges that, in the course of the performance of this Agreement, it may have access to customer information and communications, including proprietary information claimed to be unique, secret, or confidential, and which constitutes the exclusive property and trade secrets of the other party ("Confidential Information"). Except as provided in COLO's Acceptable Use Policy (AUP), each party agrees to maintain the confidentiality of the Confidential Information and to use the Confidential Information only to the extent necessary for legitimate business uses in connection with this Agreement. Upon request of either party or on termination or expiration of this Agreement, each party shall return the Confidential Information of the

Web2PDF

other party then in its possession. Nothing in this Agreement shall prohibit or limit either party's use of information which (a) is now, or hereafter becomes, publicly known or available through lawful means; (b) is rightfully in receiving party's possession, as evidenced by receiving party's records; (c) is disclosed to the receiving party without confidential or proprietary restriction by a third party who rightfully possesses and rightfully discloses the information; (d) is independently developed by the receiving party without any breach of this Agreement; (e) is the subject of a written permission to disclose provided by the disclosing party; or (f) is required by law to be disclosed. Customer further agrees and acknowledges that COLO may disclose Customer account information in accordance with COLO's AUP and Privacy Policy, located at http://www.contentcolo.com, as amended from time to time by COLO effective upon posting of the revised policy at the URL.

17. CUSTOMER DATA. Customer is responsible for its content residing on COLO servers, and except as otherwise agreed with COLO, for the backup thereof.

18. GOVERNING LAW. The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.

19. ENFORCEMENT OF AGREEMENT. In the event it is necessary for COLO to enforce its rights under this agreement, Customer agrees to pay all fees incurred by COLO (including, but not limited to, attorney's fees and collection agency fees).

20. AMENDMENT OR WAIVER. Except as otherwise provided herein, this Agreement may not be amended except upon the written consent of Customer and an officer of COLO. No failure to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power provided herein or by law or in equity. The waiver by any party of the time for performance of any act or condition hereunder shall not constitute a waiver of the act or condition itself.

21. ASSIGNMENT AND SEVERABILITY. This Agreement shall be binding upon and inure to the benefit of Customer, COLO and our respective successors, and assigns. Customer may not assign this Agreement without the prior written consent of COLO, which consent will not be unreasonably withheld. If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement shall remain in full force and effect.

22. NOTICES. All notices to Customer hereunder shall be given at the Address provided on the signature page hereto. All notices to COLO hereunder shall be given to:

CONTENTCOLO
848 N. Rainbow Blvd. #2016
Las Vegas, NV 89107
Email: legal@contentcolo.com

Any notice hereunder shall be in writing and shall be given by registered, certified or Express mail, or reliable overnight courier addressed to the addresses in this Agreement, or by facsimile. Notice shall be deemed to be given upon the earlier of actual receipt or three (3) days after it has been sent, properly addressed and with postage prepaid.

23. ENTIRE AGREEMENT. This Agreement, and any other document or agreements specifically identified in this Agreement, supercedes all previous representations, understandings or agreements.

24. ACCEPTANCE OF SERVICES. ACCEPTANCE OF THIS AGREEMENT BY COLO MAY BE SUBJECT, IN COLO'S ABSOLUTE DISCRETION, TO SATISFACTORY COMPLETION OF A CREDIT CHECK AND CONTINUED CREDIT WORTHINESS OF CUSTOMER. ACTIVATION OF SERVICE SHALL INDICATE COLO'S ACCEPTANCE OF THIS AGREEMENT. USE OF THE COLO NETWORK CONSTITUTES ACCEPTANCE OF THIS AGREEMENT. CUSTOMER represents and warrants that Customer has full authority and right to enter into this Agreement. Customer further represents and warrants that Customer is at least 18 years of age.

Last Modified April 3, 2011

2012 ContentColo - All Rights Reserved
Legal Statement | Privacy Policy | Acceptable Use Policy